# EXHIBIT C

## COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>AYA HEALTHCARE, INC.,<br><br>*Defendant.* | Suffolk, ss.<br><br>Civil Action No.<br>2184-CV-00513-BLS2<br><br><br>E-FILED 3/19/2021 |

## SECOND DECLARATION OF ALAN BRAYNIN

I, Alan Braynin, depose and say as follows:

1. I am the President and CEO of Aya Healthcare ("Aya").

2. Aya provides temporary nurse and allied staffing services to healthcare facilities located in various states, including facilities in Massachusetts, and including facilities managed in Massachusetts and elsewhere by Steward Healthcare System LLC ("Steward").

3. Cost of services from March 9 through March 18, 2021 is $2,188,786.79. As of the date of this affidavit, Steward has not made any payments on account of these services or, since March 4, 2021, on account of any part of its outstanding balance. Accordingly, Steward has made no payments on any part of its outstanding balance since the Preliminary Injunction (Dkt. 10) entered on March 9, 2021.

4. The current outstanding overdue unpaid balance is $13,298,073.19 as of March 18, 2021.

5. Exhibit 1 is a true and correct copy of the March 23, 2020 Crisis Staffing Services Agreement.

6. Exhibit 2 is a true and correct copy of a March 10, 2021 letter from Aliki Sofis to Charles Solomont.

7. Exhibit 3 is a true and correct copy of a March 10, 2021 letter from Charles Solomont to Aliki Sofis.

8. Exhibit 4 is a true and correct copy of the March 12, 2021 letter from Charles Solomont to Aliki Sofis.

9. Exhibit 5 is a true and correct copy of a March 12, 2021 Termination Letter from Aya'a Laura MacNeel to Steward's Liston Radney.

10. Exhibit 6 is a true and correct copy of a March 15, 2021 letter from Liston Radney to Laura MacNeel.

11. Exhibit 7 is a true and correct copy of the March 15, 2021 email from Steward's Patrick Lombardo to Alan Braynin.

12. Exhibit 8 is a true and correct copy of a March 16, 2021 letter from Laura MacNeel to Liston Radney, except that redactions to the image appearing on the page 2 of the letter have been added for the purposes of this filing.

13. Exhibit 9 is a true and correct copy of a March 16, 2021 letter from Aliki Sofis to Charles Solomont.

14. Exhibit 10 is a true and correct copy of a March 17, 2021 letter from Charles Solomont to Aliki Sofis.

15. Exhibit 11 is a true and correct copy of a March 17, 2021 email from Patrick Lombardo to Aya's April Hansen.

16. Exhibit 12 is a true and correct copy of a March 18, 2021 letter from Liston Radney to Laura MacNeel.

17. The Agreement does not preclude Steward from utilizing other staffing agencies to fill its needs, and, upon information and belief, Steward has multiple contracts with other staffing

agencies, including competitors of Aya, and Steward has used, and continues to use, other staffing agencies to fill staffing needs at Steward facilities.

The foregoing is true to the best of my knowledge information and belief, this 18th day of March, 2021.

/s/ *Alan Braynin*
Alan Braynin
President & CEO

# EXHIBIT 1

**Crisis Staffing Solution Agreement**

This Crisis Staffing Solution Agreement (the "**Agreement**") is made and entered into as of the date of last signature (the "**Effective Date**") between Aya Healthcare, Inc., located at 5930 Cornerstone Court West, Suite 300, San Diego, CA 92121 ("**Aya**") and Steward Health Care System LLC ("**Client Entity**") located at 1900 North Pearl Street, Suite 2400, Dallas, TX 75201 ("**Client Entity**"). Aya and Client (as defined in the Agreement) are sometimes referred to in this Agreement individually as a "**Party**" or collectively as the "**Parties**."

NOW, THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Aya and Client agree as set forth below.

I. **CRISIS STAFFING SERVICES.** Client Entity is a healthcare organization that owns or operates one or more hospitals, clinics, or other healthcare facilities (the "**Participating Facilities**"). Client Entity and the Participating Facilities are collectively, referred to as "**Client**." Client has requested that Aya provide it with Candidates (as defined below in section II-(a)) to supplement their existing workforces during anticipated crisis high census and staffing shortage periods. Client will communicate all its needs for Candidates to Aya using a method agreed to by the Parties. Aya will use best efforts to recruit, submit and staff qualified Candidates to fulfill Client's needs in this regard on a non-exclusive basis and subject to availability of qualified Candidates. Candidates actually provided under this Agreement are referred to in this Agreement as the Aya Candidate(s).

II. **PROVISION OF CANDIDATES**

   a. CANDIDATES. As used in this Agreement, the phrase "**Candidates**" means the following types of personnel:

      i. **Clinical Candidates:** Registered nurses, certified nurse assistants, clinical technicians, therapists, and other clinical, nursing and allied healthcare professionals (not including advanced practice nurses, physicians, or physicians' assistants) who are assigned to perform work for Client on a temporary or supplemental basis. Clinical Candidates are divided into the following subclasses:

         (a) **Travel Candidates:** Clinical Candidates who are assigned to perform work for Client or a Participating Facility on a temporary or supplemental basis for a specified assignment duration of one (1) to fifty-two (52) weeks in length.

         (b) **Per Diem Candidates:** Clinical Candidates who are assigned to perform work for Client or a Participating Facility on a temporary or supplemental as needed shift basis, and who are not generally confirmed for assignments of a specified duration.

      ii. **Non-Clinical Candidates**: Personnel, laborers, and professionals who are assigned to perform non-clinical work (including, but not limited to, IT, HIM, housekeeping, and all other non-clinical supplemental labor) for Client on a temporary or supplemental basis for a specified assignment duration of one (1) to fifty-two (52) weeks in length.

   b. SCHEDULING, RATE AND CANDIDATE TERMS. The scheduling, rate, and billing terms applicable to Aya Candidates offered positions by Client are set forth in the attached Addendum A. The details relating to a particular Aya Candidate's assignment, such as unit/department, shift, and dates of assignment will generally be confirmed in writing through a work order confirmation; provided that this Agreement will govern in the event of any conflict between the terms of the work order and this Agreement.

   c. CANDIDATE TIMEKEEPING & APPROVAL. Each week, Client will provide Aya with approved weekly time records for all Aya Candidates in an electronic or other format mutually acceptable to Aya and Client by noon on the Tuesday following the end of the workweek. Client must use reasonable efforts to ensure that Candidates have accurately recorded time and for approving the time worked by Aya Candidates. Client shall not permit Aya Candidates to perform work "off-the-clock." The time records shall reflect all time worked by each Aya Candidate (including the start and stop times of each work period and start and stop times of each meal period) as well as any other billable hours (such as on-call time). If Client fails to timely provide or otherwise promptly approve or object to time records, the time records submitted by the Aya Candidate or Aya, Client will have seven (7) days to resolve any such other issues. If any such issues are not fixed, they will be presumed accurate.

   d. CONSOLIDATED INVOICING AND PAYMENT TERMS. Aya will send a single, consolidated invoice covering all services performed under this Agreement for a given weekly billing period to the contact designated by Client. Client shall pay the invoices within net sixty (60) days of invoice date. If Client disputes any invoice (or component of any invoice) in good faith, Client shall pay the non-disputed invoice (or component of the invoice and shall use commercially reasonable efforts to resolve the issue in an expedited fashion. Aya's, Aya's Candidates' and Client's other obligations under this Agreement shall continue while any such dispute is resolved.

**Crisis Staffing Solution Agreement**

e. RATES INCLUSIVE. All rates stated in the Addendum A are all-inclusive and include recruitment fees, travel reimbursement, lodging per diem reimbursement, meal & incidental expense per diem reimbursement and compensation for Aya Candidates. Client acknowledges that it will be subject to the 50% deduction limitation under Internal Revenue Code ("**IRC**") § 274(n) to the extent such limitation applies to any reimbursement for which it is responsible. Aya will provide Client with sufficient substantiation of any such reimbursement in accordance with IRC § 274(d). At no additional charge, Aya may also provide access to a technology solution (subject to the terms relating to use of such solution) chosen in Aya's sole discretion or Aya clinical interview screening of Candidates submitted by Aya.

f. CANDIDATE SCREENING & CLIENT POLICIES. Client shall screen, interview and accept or reject Candidates submitted by Aya in a timely manner and notify Aya of the starting date, unit, shift, and orientation schedule for each accepted Aya Candidate. Client shall furnish Aya and the Aya Candidate with copies of all Client policies and procedures relevant to the scope of practice and duties of such Aya Candidate's assignment and with which the Aya Candidate will be expected to comply.

g. COMPLIANCE DOCUMENTATION. Aya will maintain on file or contractually require the applicable employer to maintain on file the following documentation (the "**Compliance Documentation**") for each Aya Candidate as permitted by applicable law:

- Primary source verification of licensure (Clinical Candidates Only)
- Basic Cardiac Life Support (Clinical Candidates only)
- Negative 9-panel drug screen (instant drug screen permitted)
- OIG and GSA search, and
- Criminal background check (within 12-months prior to start; instant permitted)
- COVID-19 Screening Questionnaire

Aya will provide attestations that Compliance Documentation is maintained in Aya's files in lieu of copies of such documents, including, but not limited to background check and drug screen documentation, to the extent consistent with standards of The Joint Commission or Client's applicable accrediting organization and applicable laws. Such Compliance Documentation will be provided to Client for each Aya Candidate that is hired. Client agrees to treat all Compliance Documentation and other personnel information relating to Aya Candidates as Confidential Information within the meaning of this Agreement, including as required by applicable state and federal law, such as the Americans with Disabilities Act. Client also agrees to comply with all applicable laws governing the use and handling of personnel files and backgrounds checks, including, but not limited to, the federal Fair Credit Reporting Act and to only use such information for employment purposes.

h. CANDIDATE COMPENSATION. Aya or an affiliate or subcontractor will (i) employ and compensate the Aya Candidates for hours worked for Client; (ii) deduct all applicable payroll taxes such as FICA, Federal and State from the compensation of Aya Candidates in compliance with state and federal law; and (iii) maintain relevant employment documentation such as an I-9 form, W-4 form, and photo identification for Aya Candidates.

i. PERFORMANCE OUTCOMES. Client shall notify the designated Aya representative immediately and provide written documentation (incident report) of any unsatisfactory performance or conduct of any Aya Candidates. Client will use commercially reasonable efforts to provide performance evaluations from its director of nursing or equivalent personnel to Aya in the event of any unsatisfactory performance or conduct and at the end of each assignment. In the event Client determines, in its sole discretion, that any Aya Candidates performance is unsatisfactory, Aya shall use commercially reasonable efforts to immediately replace the Aya Candidate, Client shall only be responsible for the actual hours worked by such Aya Candidate and Client shall not be responsible for any recruiting fee for a replacement Candidate.

j. MANNER OF WORK. Client shall be responsible for the day-to-day direction, control and supervision of all Aya Candidates and shall retain professional and administrative responsibility for the work performed by Aya Candidates. Client shall be responsible for determining the clinical competencies required of Aya Candidates. Notwithstanding the foregoing, Client shall not, without the prior consent of Aya, permit or request any Aya Candidate to perform any work or task or render any service that does not fall within the scope of the duties and responsibilities for such Aya Candidate's confirmed assignment, the clinical experiences and capabilities of such Aya Candidate or work at any work location other than the confirmed location, unless there is such a crisis or matter that is necessary and requires Client to do so in good faith, and consistent with the standards of The Joint Commission and CDC standards. Client shall schedule Aya

**Crisis Staffing Solution Agreement**

Candidates in a manner that allows them sufficient time to take any legally required meal, rest, or recovery breaks.

k.  FLOATING. Client agrees to float Aya Candidates in accordance with Client's floating policies, as well as the clinical experiences of the Aya Candidate being asked to float. Client confirms that Client's policies on floating comply with current standards of The Joint Commission or their accrediting organization, including the provision of an appropriate orientation to the new unit.

l.  SENTINEL EVENT & INJURY REPORTING. In the event of any incidents, including errors, unanticipated deaths, injuries, hazardous or infectious disease exposure, safety hazards or other events or claims ("Sentinel Events") involving or relating to any Aya Candidate, Client must report the Sentinel Event to Aya within seventy-two hours or earlier where required by applicable occupational health and safety laws. Reports should include the name of Aya Candidate and any other persons involved, as well as the date, time, location, and description of facts and circumstances surrounding the Sentinel Event. The Parties agree to use reasonable efforts to timely assist each other in conducting investigations of such Sentinel Events. In the event any Aya Candidate makes a claim against Client alleging any wrongdoing, Client shall notify Aya within seven (7) days.

m.  INJURY, ILLNESS & EXPOSURE RESPONSE. In the event of an injury, illness or hazardous or infectious disease exposure to any Aya Candidate at Client's job site, Client will instruct the Aya Candidate to notify its employer and to seek treatment at a third-party healthcare provider designated by its applicable employer unless the injury is an emergency. In the event of an emergency, Client will immediately send the Aya Candidate to the closest emergency room and use reasonable efforts to provide transportation if appropriate. Client will communicate to Aya the name of Candidate involved, as well as the date, time, location, and brief description of events and other persons involved in the incident.

n.  SAFETY. Client agrees to provide Aya Candidates with a safe and healthy work environment and to provide safety training, equipment, clothing, or devices necessary or required by all applicable laws for any work to be performed, or which is used by Client's own employees or other contractors in the performance of similar work. Client shall also designate a member of its staff who shall act as a coordinator to train and orient the Aya Candidates to all applicable operational and safety procedures. Client agrees that it shall have in place policies and protocols in compliance with all laws related to employee health, safety and well-being and make such policies available to Aya Candidates as if they were a member of Client's regular workforce.

o.  COVID-19 RESPONSE. Client agrees to use all commercially reasonable efforts to comply with all applicable occupational health and safety standards and standards and guidance of the Centers for Disease Control, including all precautions and guidance relating to the treatment of patients with or under observation for communicable diseases, including COVID-19 (aka 2019 Novel Coronavirus).

III. **GENERAL TERMS**

a.  TERM; TERMINATION. The term of this Agreement shall be for a period of one (1) year, and thereafter, this Agreement will renew automatically for successive one (1) year periods, unless and until terminated as provided herein. Either Party may terminate this Agreement, with or without cause, at any time upon thirty (30) days' written notice to the other Party. Either Party may also terminate this Agreement upon the occurrence of any of the following events (a **"Termination for Cause"**): (i) the other Party has materially breached any of the terms or conditions of this Agreement and such breach, if capable of cure, is not cured by the breaching Party within ten (10) calendar days following written notice to the breaching Party, (ii) the other Party dissolves; (iii) the other Party becomes insolvent or institutes insolvency proceedings or files, or is subject to a voluntary bankruptcy proceeding, petition, or action; (iv) the filing of relief against the other Party of, or the other Party is otherwise subject to, an involuntary bankruptcy proceeding, petition or action where such action is not removed or terminated within sixty (60) calendar days; (v) the assignment by the other Party of its property for the benefit of creditors; or (vi) the appointment of any receiver, trustee or liquidator for the other Party or for any property of the other Party, where such appointment is not removed or terminated within sixty (60) calendar days. If either Party terminates this Agreement (other than a Termination for Cause by Aya or Client), all Candidates then on an assignment will continue on and complete their assignments, in accordance with the terms of this Agreement. The provisions of this Agreement relating to confidentiality and any other provisions which by their nature should survive termination or expiration of this Agreement shall so survive.

b.  CONFIDENTIALITY. The Parties acknowledge that they may receive from each other from time to time, information and/or material which is confidential in nature, including, but not limited to, marketing, pricing, or other confidential business information relating to Aya, Client, or each of their clients, customers,

**Crisis Staffing Solution Agreement**

patients, subcontractors or employees, or personnel, Compliance Documentation or Competency Documentation of Aya Candidates, or applicants (collectively "**Confidential Information**"). The Parties agree to treat as confidential and not to divulge to any third-parties any Confidential Information of the other Party (and with respect to Client of any affiliates or subcontractors of Aya), except to their own employees, agents, attorneys, accountants, or representatives (collectively, "**Representatives**"), and to use such Confidential Information only for legitimate business needs relating to the performance, administration or enforcement of this Agreement. In the event a Party provides Confidential Information to such Party's Representatives, the Party shall be liable for such Representatives' compliance with the terms of this paragraph and shall require the Representatives to treat such information and/or material as confidential. Nothing herein, shall prohibit either Party from responding to lawful inquiries from government agencies or other lawful process, such as subpoenas. The Parties agree to the issuance of an injunction to prevent violations of this paragraph.

c. INSURANCE. Aya will provide general liability insurance with a limit of one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) aggregate per year. Aya will provide professional liability insurance with a limit of one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) aggregate per year for Clinical Candidates employed by Aya or its affiliates. Aya will also provide or cause to be provided worker's compensation insurance with statutory limits required by applicable law for each Candidate employed by Aya. Aya will provide certificates of insurance to Client if requested.

d. LIMITATION OF LIABILITY; DISCLAIMER. NOTWITHSTANDING ANY OTHER AGREEMENT OR PROVISION TO THE CONTRARY IN THIS AGREEMENT, UNDER NO CIRCUMSTANCES WILL EITHER PARTY HERETO BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND (AND TO THE FULLEST EXTENT PERMITTED BY LAW, PUNITIVE DAMAGES) INCLUDING, BUT NOT LIMITED TO, FINES OR PENALTIES AND LOSS OF PROFITS, WHETHER IN CONTRACT, TORT, NEGLIGENCE, WARRANTY OR OTHERWISE, WHETHER OR NOT A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE. Notwithstanding anything to the contrary in this Agreement, this section shall survive any termination or expiration of this Agreement.

e. TECHNOLOGY SOLUTION. In connection with its performance of this Agreement, Client may be given access to a technology solution(s), provided by Aya or a third party, to facilitate the performance of this Agreement, such as Aya's proprietary web-based portal known as "**Aya Connect**" (collectively, the "**Technology Solutions**"). Client agrees to comply with all terms of use requirements for such Technology Solutions at all times, including, but not limited to, such terms as may be provided by third party providers of the Technology Solutions, and to execute further agreements as may be required to obtain access to such systems. The current terms of use of Aya Connect and its related websites can be found at: https://www.ayahealthcare.com/terms-of-service and the current electronic consent policy is located at: http://www.ayahealthcare.com/electronic-consent-agreement (collectively, the "**Terms of Use**") and are incorporated by reference herein as though set forth in full at this point. Client agrees to comply with the Terms of Use and that it is "**You**" as defined and used in the Terms of Use. The Terms of Use are modified herein so that in lieu of the notice procedures in such agreement, any notices required to be given to Aya under the Terms of Use, including any updates to email addresses, shall be provided in accordance with the notice provisions in this Agreement. Client agrees that the entirety of the Aya Connect technology solution, including, but not limited to, its design, source code, databases, content, and data or materials stored on, generated by, created using, or transmitted through it (collectively "**Aya Technology Information**") shall be considered Confidential Information of Aya.

f. ACCESS CLAUSE: COMPLIANCE WITH SECTION 420.302(b). To the extent required by applicable law, Aya agrees to comply with 42 C.F.R. Section 420.302(b) and will provide access to the Comptroller General of the United States, the Department of Health and Human Services and their duly authorized representatives to this Agreement of all books, documents and records necessary to certify the nature and extent of the costs of the services performed. This includes Aya subcontractors that have a contract with Aya for which the cost or value is $10,000 or more in a twelve (12) month period. Said access shall be limited to a period of four (4) years after the furnishing of services under this Agreement hereunder.

g. COMPLIANCE WITH APPLICABLE LAWS & ACCREDITING STANDARDS. The Parties will abide by and comply with all applicable local, state, and federal regulatory agency requirements in performing this Agreement. Client will also comply with all applicable standards of any accrediting organizations of which it is a member or by which it is accredited.

**Crisis Staffing Solution Agreement**

h. NONDISCRIMINATION. In compliance with federal law, including the provisions of the Title IX of the Education Amendments of 1972, Sections 503 and 504 of the Rehabilitation Acts of 1973, and the American with Disabilities Act of 1990, the Parties hereto will not discriminate on the basis of race, sex, religion, color, national or ethnic origin, age, disability, sexual orientation or military service.

i. INDEPENDENT NATURE OF PARTIES. Aya provides services to Client as an independent contractor. Neither Party to this Agreement shall be considered the agent, partner, joint venture, franchisor, franchisee, employer, or employee of the other Party.

j. SUBCONTRACTORS. Aya may use affiliates and subcontractors to perform its duties and obligations under this Agreement, including to provide and employ Candidates.

k. NOTICES. All notices, requests, demands or other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the Party to whom notice is to be given, or on the second day after mailing if mailed to the Party to whom notice is to be given, by first class mail, registered or certified, postage prepaid, and properly addressed as provided below. Any Party may change its address for purposes of this paragraph by giving the other Party written notice of the new address in the manner set forth above.

| To: | To: |
|---|---|
| Steward Health Care System LLC | Aya Healthcare, Inc. |
| 1900 North Pearl Street, Suite 2400 | Attn: Facility Contracts |
| Dallas, TX, 75201 | 5930 Cornerstone Court West, Suite 300 |
| Attn: Liston Radney, Deputy General Counsel | San Diego, CA 92121 |
| Email: Liston.Radney@steward.org | Email: facilitycontracts@ayahealthcare.com |
| | CC: Attn: Legal |
| | Aya Healthcare, Inc. |
| | 5930 Cornerstone Court West, Suite 300 |
| | San Diego, CA 92121 |

l. ASSIGNMENT. Neither party will assign this Agreement or any of its rights or duties under this Agreement except upon prior written agreement of the other party. Aya (and its successors and assigns) may assign, transfer or encumber any of its rights or duties under this Agreement in its discretion. This Agreement shall be binding upon and inure to the benefit of the permitted successors and assigns of the Parties.

m. FORCE MAJEURE. Neither Party shall be responsible for failure or delay in providing or continuing to provide services to Client under this Agreement if such failure or delay is due to labor disputes, strikes, fires, riots, war, acts of God, or any other acts, causes or occurrences beyond the control of the other Party.

n. ENTIRE AGREEMENT. This Agreement, including all exhibits and addenda, contains the entire agreement between the Parties relating to the subject matter hereof. All prior and contemporaneous oral and written agreements, understandings, negotiations, commitments and practices between the Parties are hereby superseded. No amendments to this Agreement may be made except by a written agreement signed by both Client Entity and Aya.

o. SEVERABILITY. If any provision of this Agreement is held to be invalid, void or unenforceable such provision shall be amended to the extent permissible as to effectuate the original intent of the parties, and all other provisions shall remain valid and be enforced and construed as if such invalid provision were never a part of this Agreement.

p. SURVIVAL. Those provisions that by their nature are intended to survive termination or expiration of this Agreement shall so survive, including, but not necessarily limited to, all indemnity, payment, confidentiality and insurance obligations set forth herein.

q. INCORPORATION BY REFERENCE. Each Exhibit, Schedule or Addendum attached to this Agreement is hereby incorporated by reference in this Agreement as if the same was set out in full in the text of this Agreement.

r. ADVICE OF COUNSEL. Each Party acknowledges that it has been given the opportunity to discuss this Agreement with their legal counsel and utilized that opportunity to the extent desired. Should any provision

**Crisis Staffing Solution Agreement**

of this Agreement require judicial interpretation, the court interpreting or construing the provision shall not apply the rule of construction that a document is to be construed more strictly against one Party.

s. WAIVER. The failure of either Party to enforce at any time, or from time to time, any provision of Agreement shall not be construed as a waiver thereof.

t. AUTHORITY. Each person signing this Agreement on behalf of a Party represents that they have the authority to bind the Party for whom they are signing to this Agreement. By signing this Agreement, Client represents that it is entering this Agreement on behalf of Participating Facilities, and that it has the authority to bind Participating Facilities to the terms of this Agreement. Client Entity and the applicable Participating Facility shall be irrevocably, jointly and severally liable under this Agreement.

u. HEADINGS. The titles of the articles, sections, subsections, paragraphs and subparagraphs of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

v. COUNTERPARTS. This Agreement may be executed in one or more counterparts and transmitted and executed electronically, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**AGREED TO AND ACCEPTED BY:**

| **Steward Health Care System LLC** | **Aya Healthcare, Inc.** |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Signature | Signature |
| John Doyle | John Martins |
| Name | Name |
| Treasurer | SVP, Operations Strategy |
| Title | Title |
| 3/23/2020 | 03/23/2020 |
| Date | Date |

**Crisis Staffing Solution Agreement**

**ADDENDUM A -TERMS AND CONDITIONS FOR CANDIDATES**

1. **CANDIDATE RATES & RATE RULES**
   1.1. **Regular Rates.** Regular rates for certain positions are set forth on Addendum A-1; provided, however that different rates may be mutually agreed to between the Parties and confirmed by work order confirmation. Regular rates for positions not covered on Addendum A-1 will be mutually agreed to between the Parties and confirmed by work order confirmation or otherwise in writing prior to the Candidate starting work.
   1.2. **Overtime.** Overtime will be billed at a premium overtime rate of one and one-half times (1.5x) the regular rate. Overtime is generally defined as hours worked in excess of forty-eight (48) hours in one workweek.
   1.3. **Holidays.** Work performed on New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, as defined below, will be invoiced at a premium Holiday rate of one and one-half times (1.5x) the regular rate. Holidays begin at 12:00 midnight the day of the holiday and end 24 hours later.
   1.4. **On-Call & Call-Back.** On-call hours worked will be billed at $10.00 per hour. If a Candidate is on-call and is then called back/called in to work, all hours worked will be billed at a premium Call-Back rate equal to one and one-half times (1.5x) the regular rate with a minimum of two (2) hours.
   1.5. **Mileage.** For Candidates where driving is required to perform their job, Client will reimburse Aya for mileage incurred for the driving. All mileage shall be reimbursed at the IRS Standard Mileage Rate in effect at the time of travel.
   1.6. **Orientation.** Client will provide Candidates with orientation in accordance with applicable standards of The Joint Commission or their accrediting organization and Client's policies. All time spent by Candidates in Client-provided or required orientation is billable.

2. **SCHEDULING AND CANCELLATION POLICIES FOR TRAVEL CANDIDATES**
   2.1. **Scheduling & Guaranteed Hours.** Travel Candidates will be confirmed for assignments scheduled to last for between one (1) and fifty-two (52) weeks. Travel Candidates can be assigned to eight (8), ten (10), or twelve (12) hour shifts. Client understands and acknowledges that significant expenses are spent in order to mobilize, recruit and arrange for Travel Candidates to be available in response to Client's crisis needs which are often provided with limited advance notice. Accordingly, for Travel Candidates confirmed to twelve (12)-hour shifts, Client will guarantee a minimum of forty-eight (48) hours per each one-week work period, or a greater amount if agreed to in a Work Order Confirmation. For Travel Candidates confirmed to shifts lengths less than twelve (12)-hours, Client will guarantee a minimum of forty (40) hours per each one-week work period, or a greater amount if agreed to in a Work Order Confirmation.
   2.2. **Guaranteed Hours - COVID-19 Exposure.** Client is also responsible for payment of all guaranteed hours during any period of quarantine, self-isolation, remediation or other appropriate time away from patient care as a result of an Aya Candidate's exposure, potential exposure, care or treatment relating to COVID-19 or other hazardous exposure while at Client's location, provided that the exposure was proven to have occurred at Client's location (the "**Remediation Period**"). Aya shall use commercially reasonable efforts to confirm that no Aya Candidate will have traveled to a country in which any return requires a fourteen (14) day self-quarantine prior to submission to Client, and shall further require that no Aya Candidate travels to any such country which requires a fourteen (14) day self-quarantine during such Aya Candidate's assignment. In furtherance of the foregoing, Aya shall require Aya Candidates to complete a COVID-19 Screening Questionnaire.

3. **SCHEDULING AND CANCELLATION POLICIES FOR PER DIEM CANDIDATES**
   3.1. **Scheduling.** Per Diem Candidates will be scheduled on a shift or as needed basis.
   3.2. **Cancellations.** Aya and Client agree to a two (2) hour cancellation policy. If Client cancels a scheduled shift less than two (2) hours prior to the start of the shift or with less than two (2) hours' notice during the shift, Client will be billed for two (2) hours plus any time worked.
   3.3. **Late Call.** When Client requests Candidate less than one (1) hour prior to the scheduled start of a shift, Client will be billed for that Candidate from the scheduled start of the shift; except if Candidate actually reports to and commences work later than one (1) hour after the start of the shift, Client will only be billed for all actual hours worked. If Candidate is requested after the start of the shift, Client will be billed for that Candidate from the time the request was made; except if Candidate actually reports to and commences work more than one (1) hour after the time of the request, Client will only be billed for all actual hours worked.

**Crisis Staffing Solution Agreement**

- 3.4. **Call-Offs (In-Shift Cancellation).** If Candidate is no longer needed by Client after reporting for work, they may be called off by Client. If Candidate is called off by Client, Client shall be billed for the actual number of hours worked by Candidate or four (4) hours, whichever is greater.
4. **CONVERSION/ PLACEMENT FEE STIPULATION.** If Client hires any Candidate who was presented to Client by Aya during the term of this Agreement or up to one (1) year after the start of a Candidate's assignment, a fee of twenty percent (20%) of the Candidate's annual salary will be paid by Client to Aya. If a Candidate has completed 468 hours on assignment under this Agreement, the fee is waived. Notwithstanding the foregoing, this fee shall not be applicable to any Aya candidate that applies to a job posting in general circulation for a position with Client. Notwithstanding anything to the contrary in this Agreement, this Section shall survive any termination or expiration of this Agreement.
5. **STATEMENTS OF WORK.** The Parties may agree to additional terms in a Statement of Work covering a position or class of positions. Such terms may include, but will not be limited to reimbursable expenses, cancellation policies and alternative placement fees.

**Crisis Staffing Solution Agreement**

## ADDENDUM A-1: RATE TABLES FOR CANDIDATES

| Profession | Crisis Response Rate |
| --- | --- |
| RN Med Surg, MS/Tele, Tele | $90.00 |
| RN ICU | $100.00 |
| RN ER | $87.00 |
| RN OR | $120.00 |
| Respiratory Therapist | $80.00 |

At any point during the term of this Agreement, rates may be renegotiated and must be accepted in writing by both Parties.