UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAPITAL HEALTH SYSTEM, INC.,** | **Case No. 24–cv–00202–ESK–MJS** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **SYMMETRY WORKFORCE SOLUTIONS, LLC,** *et al.***,** | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendants Symmetry Workforce Solutions LLC (Symmetry) and Aya Healthcare Inc.'s (Aya) motion to dismiss and, in the alternative, to strike (Motion) (ECF Nos. 48, 48–1 (Mov. Br.)) the second amended complaint (ECF No. 47 (Compl.)).   Plaintiff filed an opposition to the Motion (ECF No. 49 (Opp'n Br.), in response to which defendants filed a reply (ECF No. 50).   For the following reasons, the Motion is **GRANTED**.

## I.   BACKGROUND

This action concerns allegations of defendants' deceptive acts and unconscionable trade practices, which violated the New Jersey Consumer Fraud Act (CFA) and several common law doctrines.   (Compl. ¶ 1.)   Plaintiff is a non-profit corporation that operates hospitals and satellite emergency departments in New Jersey.   (*Id.* ¶ 25.)   Aya is a nurse staffing agency and the parent company of Symmetry, a managed service provider (MSP).   (*Id.* ¶¶ 2, 6.)   A MSP is an intermediary between a healthcare staffing agency and a hospital that fills vacancies.   (*Id.* ¶ 38.)   An MSP can either be staffing-led or vendor-neutral.   (*Id.* ¶ 39.)   While staffing-led MSPs are owned and

controlled by healthcare staffing agencies, vendor-neutral MSPs contract with various healthcare staffing agencies to fulfill a healthcare facility's staffing needs.   (*Id.* ¶¶ 39–57.)

On March 2, 2020, plaintiff and Symmetry entered into a Managed Service Provider Agreement (Agreement).   (*Id.* ¶ 74; ECF No. 47–1 (Agreement).) Because of staffing emergencies caused by the COVID-19 pandemic, plaintiff retained Symmetry to source it with a temporary workforce of nurses.   (Compl. ¶ 66.)   Symmetry was to "use commercially reasonable efforts to recruit, submit and staff qualified [c]andidates to fulfill [plaintiff's] needs through the use of [a]gencies."   (Agreement p. 2.)   "Agency" is defined as Symmetry's "corporate affiliates or third-party staffing contractors."   (*Id.*)   While Symmetry reserved the right to choose the agencies, plaintiff had the authority to direct Symmetry not to use a particular agency.   (*Id.*)   If Symmetry could not fill a position, plaintiff was allowed to use other vendors to fulfill its staffing needs.   (*Id.*)

An addendum to the Agreement sets forth the pre-negotiated rates plaintiff agreed to pay the nurses that Symmetry would recruit.   (Agreement pp. 12, 15, 16.)   These rates could be renegotiated and then accepted in writing, particularly "where Symmetry and [plaintiff] mutually agree[d] that a higher rate [was] appropriate to fill a certain position(s)."   (*Id.* pp. 15, 16.)   The Agreement has an integration clause, stating that all exhibits and addenda to the Agreement "contain[] the entire agreement" and "[a]ll prior and contemporaneous oral and written agreements, understandings, negotiations, commitments and practices between" Symmetry and plaintiff are superseded. (*Id.* p. 9.)

Plaintiff argues that Symmetry fraudulently induced it to enter into the Agreement by repeatedly misrepresenting itself as a "100 percent neutral" MSP.   (Compl. ¶¶ 264, 308.)   Symmetry made this misrepresentation in a

May 2019 letter plaintiff received from the New Jersey Hospital Association, during meetings from late 2019 and early 2020, and on its website, which as recently as December 28, 2023, indicated it was vendor-neutral. (*Id.* ¶¶ 147, 152, 153.) Yet, at no time did Symmetry disclose that it was owned by Aya and would be acting on Aya's behalf as a staffing-led MSP. (*Id.* ¶¶ 58, 73, 112, 140.) Although plaintiff understood that it was communicating with Symmetry's representatives, the individuals plaintiff was speaking with were in fact Aya's employees. (*Id.* ¶¶ 225, 226.) Rather than competitively choose nurses from the local market at the standard rate, Symmetry allegedly recruited more than 71 percent of the nurses it staffed for plaintiff from Aya at inflated rates. (*Id.* ¶¶ 115, 116, 118.) Plaintiff argues that Symmetry "forced" it to increase its pre-negotiated rates for nurses by more than 120 percent. (*Id.* ¶ 105, 109.) While Symmetry justified these rate increases due to the rising demand for nurses during the pandemic and nurses mandating higher pay, plaintiff alleges it was "exploited" by Symmetry for the benefit of Aya. (*Id.* ¶¶ 105, 121, 128–130.)

On December 8, 2023, plaintiff commenced this action in the Superior Court of New Jersey. (ECF No. 1 ¶ 1.) Defendants timely removed on January 12, 2024 on the basis of diversity jurisdiction. (*Id.* ¶ 17.) In response to defendants having moved to dismiss (ECF No. 9) the original complaint (ECF No. 1–1) on February 2, 2024, plaintiff filed an amended complaint on March 8, 2024 (ECF No. 24). Defendants requested leave to file a motion to dismiss the amended complaint on April 24, 2024 (ECF Nos. 38, 39), and I held a pre-motion conference on June 24, 2024 (ECF No. 44).

On August 7, 2024, plaintiff filed the second amended complaint, asserting the following claims: (1) count one, violation of the CFA for deceptive business practices; (2) count two, violation of the CFA for price gouging; (3) count three, violation of the CFA for scheming not to sell services advertised; (4) count four,

3

violation of the CFA for regulatory failures; (5) count five, fraud in the inducement; (6) count six, fraud; (7) count seven, breach of good faith and fair dealing; and (8) count eight, fraudulent concealment of evidence. (Compl. pp. 59–75.) Counts four and seven are asserted against only Symmetry. (*Id.* pp. 68, 73.)

## II. MOTION

Defendants seek dismissal of the second amended complaint under Federal Rule of Civil Procedure (Rule) 12(b)(6). (Mov. Br. pp. 9–11.) Defendants argue that the second amended complaint fails to state CFA claims, lacks the particularity required for fraud claims, and is otherwise barred by contractual and common law doctrines. (*Id.* pp. 9–11.) Defendants assert that their conduct was authorized because the Agreement permitted Symmetry to recruit from Aya and to renegotiate the rates for nurses,. (*Id.* pp. 9–11, 13–16.) If the second amended complaint is not entirely dismissed, defendants argue that certain portions of the second amended complaint should be stricken. (*Id.* pp. 43–48.)

Plaintiff counters that given the length of the second amended complaint, "defendants cannot seriously" allege that plaintiff's claims are insufficiently pleaded. (Opp'n Br. p. 10.) Plaintiff also argues that the Agreement is ambiguous as to whether Symmetry is vendor-neutral and the integration clause does not bar it from relying on evidence outside of the four corners of the Agreement. (*Id.*)

The parties raise several arguments, but I focus on those that are most relevant to resolving the outcome of the Motion and this action.

## III. LEGAL STANDARD

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). To survive dismissal under Rule 12(b)(6), "a

complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"   *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)).   Courts shall accept the plaintiff's factual assertions, which "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 342 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."   *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Under Rule 12(f), a party may move to strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   While courts may exercise "considerable discretion" when reviewing a motion to strike, granting such a motion is a "drastic remedy" that is only appropriate when grounds for doing so is "readily apparent from the face of the pleadings."   *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J.1993); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 740 (D.N.J. 2013).   Hence, motions to strike are "disfavored and usually will be denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'"   *Jones v. United States*, 10–03502, 2012 WL 2340096, at *2 (D.N.J. June 18, 2012) (quoting *River Road Dev. Corp. v. Carlson Corp. N.E.*, No. 89–07037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

## IV. DISCUSSION

### A.      Counts One through Four

"[T]he CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'"    *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997)).    "To state a CFA claim, a plaintiff must allege '(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.'"    *Marshall v. Verde Energy USA, Inc.*, No. 18–01344, 2019 WL 1254562 at *3 (D.N.J. Mar. 19, 2019) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)).    Unlawful conduct is defined as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission."    N.J.S.A. 56:8-2.

The CFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate."    *Cetel*, 460 F.3d at 514 (quoting *Lemelledo v. Beneficial Management Corp.*, 696 A.2d 546, 550 (N.J. 1997)).    "The entire thrust of the [CFA] is pointed to products and services sold to consumers in the popular sense."    *Id.* (quoting *Arc Networks, Inc. v. Gold Phone Card Co.*, 756 A.2d 636, 638 (N.J. Super. Ct. Law Div. 2000)).    "Thus, the CFA 'is not intended to cover every transaction that occurs in the marketplace[,]' but, rather, '[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.'"    *Id.* (alterations in original) (quoting *Arc Networks, Inc.*, 756 A.2d at 638).

Plaintiff's CFA claims arise from defendants' scheme to "deceptively and fraudulently advertise[], promote[], and emphasize[] Symmetry's MSP service

6

as '100 percent vendor-neutral'" while "failing to disclose that Symmetry was owned by Aya." (Compl. ¶¶260, 265, 283.) Plaintiff alleges that through these "repeated false and misleading representations," defendants "artificially inflat[ed] bill rates to create the appearance of an increased demand" during a "public health crisis to maximize their margins." (*Id.* ¶¶258, 259, 274.) Plaintiff also claims that Symmetry violated the CFA by failing to register as a temporary help service firm and/or health care service firm with the New Jersey Department of Consumer Affairs. (*Id.* ¶¶290–302.)

Defendants argue that because plaintiff is not a "consumer" and did not receive "goods or services that are sold to the public at large" from defendants, the CFA claims fail. (Mov. Br. pp.27–30.) Courts have yet to address whether staffing services for medical facilities are subject to the CFA or exempt because the staff are learned professionals. However, assuming the CFA is applicable, I find that these claims are insufficiently pleaded and are barred by the parol evidence rule.

### 1.    Failure to State a Claim

"The ascertainable loss and causation elements of a CFA claim are set forth in N.J.S.A. 56:8-19, which authorizes a statutory remedy for '[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.'" *Truglio v. Planet Fitness, Inc.*, No. 15–07959, 2016 WL 4084030, at *5 (D.N.J. July 28, 2016) (quoting *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013)). Although the CFA does not define "ascertainable loss," and there is no legislative history shedding light on its meaning, "[t]he New Jersey Supreme Court has instructed, '[t]o give effect to the legislative language describing the requisite loss for private standing under the CFA, … a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'"

7

*Franulovic v. Coca Cola Co.*, No. 07–00539, 2007 WL 3166953, at \*7 (D.N.J. Oct. 25, 2007) (alterations in original) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable," and to raise a genuine dispute, "the plaintiff must proffer evidence of loss that is not hypothetical or illusory." *Id.* (quoting *Thiedemann*, 872 A.2d at 792).

Here, plaintiff alleges that it overpaid for nurses because of defendants' deceptive business practices, price gouging, scheme not to sell their advertised services, and Symmetry's regulatory failures. (*See* Compl. ¶¶ 249–302.) Plaintiff pleads how much the rates for nurses rose within a period of time. (*Id.* ¶¶ 106, 109, 110.)    However, rather than compare the rates it paid with the relevant market rates, plaintiff's broad and conclusory assertion of loss lacks any substantive allegations of what it would have paid had it contracted with a different vendor-neutral MSP.  *See Franulovic*, 2007 WL 3166953, at \*7-8.  Since the second amended complaint does not plausibly allege an ascertainable loss or how defendants' alleged misrepresentations caused the loss, the CFA claims will be dismissed.

### 2.    Parol Evidence Rule

It is well established that absent a substantial aggravating circumstance, courts will dismiss a CFA claim "based on a valid, written contract" if "the conduct alleged is 'expressly authorized' by the terms of that contract." *Marshall*, 2019 WL 1254562 at \*3 (quoting *Urbino v. Ambit Energy Holdings, LLC*, No. 14–05184, 2015 WL 4510201, at \*3 (D.N.J. July 24, 2015)).  To support its CFA claims, plaintiff relies on the advertisements and communications with Symmetry in 2019 and 2020 before the parties entered into the Agreement.  (*See* Compl. ¶¶ 47, 152, 153.)  However, for the Court to consider such evidence, plaintiff must avoid application of the Agreement's integration clause and the parol evidence rule.  *In re Tarragon Corp.*, No. 09–

01465, 2010 WL 3921996, at *8 (Bankr. D.N.J. Sept. 27, 2010) (noting that a "CFA claim is still a claim of fraud and must meet the exception to the parol evidence rule.")

"[W]here a contract contains an integration clause, the parol evidence rule bars the introduction of evidence of extrinsic negotiations or agreements to supplement or vary its terms." *Achieve 24 Fitness Ltd. Liab. Co. v. Alloy Pers. Training Sols., LLC*, No. 21–12085, 2023 WL 2264129, at *12 n.10 (D.N.J. Feb. 28, 2023). An exception to this rule exists for the "[i]ntroduction of extrinsic evidence to prove fraud, including a violation of the []CFA." *Melville v. Spark Energy, Inc.*, No. 15–08706, 2016 WL 6775635, at *4 (D.N.J. Nov. 15, 2016). The exception, however, only applies if "[t]he alleged fraud … concern[s] a matter not addressed in the agreement; in other words, the subject of the misrepresentation must be extraneous to the agreement." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. 15–03103, 2016 WL 1718100, at *3 (D.N.J. Apr. 29, 2016). "Where, by contrast, misrepresentations made during the course of negotiations are addressed by the terms of the contract, the claim becomes one for breach of contract," and "the integration clause will bar the claim." *Id.*

I find that counts one, two, and three are based on conduct permitted by the Agreement and that the Agreement's integration clause unambiguously disclaims reliance on prior representations. (*See* Agreement p. 9.) The Agreement expressly permitted Symmetry to use its corporate affiliates to fulfill plaintiff's staffing needs and expressly addresses how a nurse's rates are determined. (*Id.* pp. 2, 16.) Although the Agreement is silent as to the kind of MSP Symmetry would operate as, the terms of the Agreement adequately disclose Symmetry's business practice of using agencies to recruit staff. (*See id.* p. 2.) Furthermore, while plaintiff appears to now be seeking to avoid its contractual obligation to pay the renegotiated rates for nurses, Symmetry did not have the unilateral authority to dictate rates or demand rate increases

without plaintiff's consent. (*Id.* p.16.) Since "alleged misrepresentations that contradict the express words of a written instrument are inadmissible to avoid an obligation knowingly assumed," the CFA claims in counts one, two, and three against Symmetry cannot survive.[1]   *St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*, No. 04–04540, 2005 WL 1199045, at \*5 (D.N.J. May 18, 2005).

### B.    Counts Five and Six

"The same legal standard governs common law fraud [and] fraudulent inducement … claims."   *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03–001026, 2007 WL 4554208, at \*27 (D.N.J. Dec. 21, 2007).   "To establish a fraud claim under New Jersey law, a plaintiff must show that (1) the defendant made a material misrepresentation of a currently existing or past fact, (2) the defendant knew or believed the statement was false, (3) the defendant intended for the plaintiff to rely on the misrepresentation, (4) the plaintiff relied on the misrepresentation, and (5) the plaintiff was damaged."   *Id.*   While fraud in the inducement involves "a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised," common law fraud concerns fraud in the performance of a contract. *Id.* (quoting *Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1020, 1032 (D.N.J.1995)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).   To satisfy this heighted pleading standard, a "'plaintiff must include precise allegations of date, place, or time' in its pleading or use alternative 'means of injecting precision and some measure of substantiation into their allegations of fraud.'"

---

[1] Since Aya was not a party to the Agreement, this analysis applies only to Symmetry.

*Vita v. Vita*, No. 21–11060, 2022 WL 376764, at *4 (D.N.J. Feb. 8, 2022) (quoting *Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002)).   "The heightened standard is intended 'to place the defendants on notice of the precise misconduct with which they are charged.'" *Id.* (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).

In support of its fraud and fraud in the inducement claims, plaintiff again relies on the communications it had with Symmetry before entering into the Agreement.   (Compl. ¶¶ 147, 152, 153.)   For the reasons already discussed, the attempted use of these communications to assert fraud claims is barred by the Agreement's integration clause and the parol evidence rule.   (*See supra* pp.9, 10.)   As to plaintiff's claim that Symmetry advertised itself as vendor-neutral on its website (Compl. ¶¶ 152, 157–166), plaintiff has provided no details concerning whether and when it viewed the website to rely on these alleged misrepresentations.   *See Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 539 (D.N.J. 2011).   Even if plaintiff were to allege they viewed the website before entering into the Agreement, such an assertion would likely be barred by the Agreement's integration clause and the parol evidence rule as the basis for fraud claims.   Beyond alleging that Aya and Symmetry are "completely interrelated and integrated" (Compl. ¶¶ 219–237), plaintiff also fails to state with particularity what communications it had with Aya that it ultimately relied upon to its detriment.

Additionally, defendants' alleged misrepresentations are intrinsic, rather than extrinsic, to the Agreement.   *See Vita*, 2022 WL 376764, at *6; *Rainforest Distrib. Corp. v. Vybes L.A. LLC*, No. 20–00634, 2021 WL 3879099, at *10 (D.N.J. Aug. 31, 2012).   Although plaintiff takes issue with Symmetry having predominately fulfilled its staffing needs through Aya, at no time prior to or after the Agreement was executed did plaintiff express that Symmetry could not use Aya or any other corporate affiliate.   Similarly, despite plaintiff

11

alleging that it confronted Symmetry about the price increases (Compl. ¶122), plaintiff fails to plead how Symmetry's representations about the rate for nurses amounted to fraud when the rates were increased pursuant to the terms of the Agreement (*see* Agreement p.16).

Of note, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir.1995). Since the fraud and fraud in the inducement claims will be dismissed for failure to state a claim, I need not address this doctrine.   Plaintiff is, however, notified that even if these claims are sufficiently pleaded, they may be barred by the economic loss doctrine.

### C.    <u>Count Seven</u>

"The implied covenant of good faith and fair dealing is a 'component of every contract that requires both parties to a contract act in good faith[,]' that is, they must 'adher[e] to community standards of decency, fairness, or reasonableness.'"   *Marshall*, 2019 WL 1254562, at *5 (alterations in original) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007)). "When a party has the right to exercise discretion under a contract, the discretion must not be used for an improper motive, or 'arbitrarily, unreasonably, or capriciously.'"   *Id.* (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1128 (N.J. 2001)). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."   *Wilson*, 168 N.J. at 1130.   "Examples of bad faith conduct that supports an implied covenant claim are (1) purposefully hiding vital information to ensure that the plaintiff continued to perform under the contract even though the defendant knew it was going to terminate the plaintiff's exclusive distributorship arrangement; and (2) deliberating evading the plaintiff after the plaintiff notified the defendant that

it intended to exercise its option to purchase a lease." *Marshall*, 2019 WL 1254562, at *5.

"[A] plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." *Id.* (quoting *Urbino*, 2015 WL 4510201, at *6). "Although a court may infer that [a] [d]efendant acted with a bad motive, [a] [p]laintiff must provide factual support that would allow the Court to draw such a conclusion." *Id.* "Without such 'factual content,' the Court is unable to draw the reasonable inference that [d]efendants had a 'bad motive' in exercising their discretionary price-making authority." *Slack v. Suburban Propane Partners, L.P.*, No. 10–02548, 2010 WL 3810870, at *7 (D.N.J. Sept. 21, 2010) (quoting *Ashcroft*, 556 U.S. at 663).

Outside of "a formulaic recitation of the elements of [this] cause of action," plaintiff fails to provide any facts that support an inference that Symmetry acted in bad faith when using Aya to fulfill plaintiff's staffing needs. *See Ashcroft*, 556 U.S. at 678. Instead, the allegations in the second amended complaint do not plausibly allege that Symmetry acted contrary to the terms of the Agreement. Plaintiff, thus, fails to state a claim for breach of the implied covenant of good faith and fair dealing.

### D.   Count Eight

"Fraudulent concealment applies when 'the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry.'" *Alpine Country Club v. Sompo Am. Ins. Co.*, No. 23–00043, 2024 WL 3688577, at *10 (D.N.J. Aug. 7, 2024) (quoting *Bohus v. Beloff*, 950 F.2d 919, 925 (3d. Cir. 1991)). "To prevail on a fraudulent concealment claim, the movant must assert each of the following five elements: (1) the defendant had a duty to disclose information to the plaintiff; (2) the information was material; (3) the plaintiff could not

reasonably have obtained access to the evidence from another source; (4) the defendant intentionally withheld, altered, or destroyed information; and (5) the plaintiff suffered harm by relying on the defendant's non-disclosure." *Id.* Fraudulent concealment claims are also subject to the Rule 9(b) heightened pleading standard. *Id.*

Plaintiff alleges that by defendants updating their website and removing any indication of Symmetry being vendor-neutral, they are liable for fraudulently concealing evidence. (*See* Compl. ¶¶325–331.) However, beyond making conclusory allegations that defendants had an unspecified legal obligation to preserve their website and to not materially alter it, plaintiff does not plausibly plead any facts to support the claims. Since plaintiff fails to plead this claim with particularity, this claim will be dismissed.

## V. CONCLUSION

For the reasons stated above, the Rule 12(b)(6) aspect of the Motion is **GRANTED**. Thus, the Rule 12(f) arguments need not be addressed. An order will follow.

/s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: June 2, 2025